UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-81354-CIV-MARRA/BRANNON

GLORIA COOTS BALDWIN, et al.,

    Plaintiffs,

vs.

EMI FEIST CATALOG, INC.,

    Defendant,
_____/

**<u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS</u>**

**THIS CAUSE** is before the Court upon Defendants' Motions to Dismiss (DE 12, 42). Defendant filed its first motion to dismiss on January 31, 2012, asserting failure to state a claim and lack of personal jurisdiction. Def.'s Mot. to Dismiss (DE 12). The Court then entered an order on April 16, 2012 allowing jurisdictional discovery and granting leave to file an Amended Complaint (DE 38). In that Order, the Court denied the portion of Defendant's first motion to dismiss seeking dismissal for failure to state a claim as moot, but allowed the portion addressing personal jurisdiction to remain pending against the Amended Complaint. Defendant then filed its second motion to dismiss (DE 42) addressing the Amended Complaint on May 7, 2012. The second motion sought dismissal for lack of subject matter jurisdiction—in particular, ripeness—and failure to state a claim.

    Each motion is now fully briefed and ripe for adjudication. Upon review, the Court will dismiss the Amended Complaint for lack of personal jurisdiction.

**BACKGROUND**

Plaintiffs in this action are heirs of John Frederick Coots, who with James Lamont Gillespie, composed the song *Santa Claus is Coming to Comin' to Town* ("the Work") in 1934. Defendant, EMI Fiest Catalog, Inc., currently holds the rights to the Work. Plaintiffs seek a declaration under 28 U.S.C. §§ 2201(a) and 2202 that either of the two notices of termination they sent to Defendant in 2007 and 2012, respectively, are valid pursuant to 17 U.S.C. § 203. These notices of termination purport to terminate Defendant's ownership of the Work effective in either 2016 or 2021, such that ownership would revert to Plaintiffs—among other statutory heirs—for the remainder of the copyright period.[1]

In response, Defendant filed the instant motions seeking to dismiss this action for failure to state a claim, for lack of ripeness, and for lack of personal jurisdiction. As a threshold matter, the Court finds that the controversy between Plaintiffs and Defendant is sufficiently ripe to give the Court subject matter jurisdiction. Next, the Court finds that Plaintiffs cannot establish that the Court has personal jurisdiction over Defendant. Because this finding warrants dismissal, the Court does not address whether Plaintiffs have stated a claim under Fed. R. Civ. P. 12(b)(6).

**DISCUSSION**

*A.   Ripeness*

The first issue the Court must resolve is whether the controversy between Plaintiffs and

---

[1] Because the instant motions can be resolved on the basis of personal jurisdiction, the Court will forgo thoroughly tracing the ownership of the Work from its creation in 1934 to the present. Instead, the Court will provide details only as necessary to clarify the bases of its other findings.

Defendant is constitutionally ripe. *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001) (referring to ripeness as a "threshold consideration[]"). "Congress limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of the fact that federal judicial power . . . extends only to concrete 'cases or controversies.'" *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quoting *Tilley Lamp Co. v. Thacker*, 454 F.2d 805, 807-08 (5th Cir. 1972)). "The controversy must be more than conjectural; the case must 'touch[] the legal relations of the parties having adverse legal interests.'" *Id.* (quoting *United State Fire Ins. Co. v. Caulkins Indiantown Citrus*, 931 F.2d 744, 747 (11th Cir. 1991)). In the context of a declaratory judgment action, the essential question is "'whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

To determine whether a concrete controversy exists as to adverse legal interests between the parties, the Court looks to the statutory provisions authorizing the notices of termination that are the basis of this action. To protect authors from permanently losing the rights to their works before they are able to determine the work's value, Congress created an inalienable right to terminate a prior grant of an interest in a copyright. *See generally* Lydia Pallas Loren, *Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate*, 62 Fla. L. Rev. 1329, 1333-42 (2010). Congress did so in two provisions; specifically, 17 U.S.C. §§ 203 and 304. These termination rights can sometimes be exercised by an author's statutory heirs. Loren, *supra*, at 1331 n.5, 1335-36.

In the instant case, Plaintiffs purported to exercise the termination right created by § 203,

3

which provides for the effectuation of a termination "by serving an advance notice in writing, signed by the number and proportion of owners of termination interests required under clauses (1) and (2) of this subsection . . . upon the grantee or the grantee's successor in title." 17 U.S.C. § 203(a)(4). Generally, the notice must state an effective date that falls approximately thirty-five to forty years after the grant was made and must be served at least two years before the effective date. However, regardless of the effective date, under § 203(b)(2), "[t]he future rights that will revert upon termination of the grant become vested *on the date the notice of termination has been served*." (emphasis added).

Defendant, citing *Seigel v. Warner Bros. Entertainment, Inc.*, argues that claims based on a notice of termination under § 203 do not "accrue" until the effective date of the notice. 542 F. Supp. 2d 1098, 1134 n.7 (C.D. Cal. 2008). Defendant then states the general rule that a claim usually is not ripe until is has accrued. *Reiter v. Cooper*, 507 U.S. 258, 267 (1993) ("While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute.").

The Court finds Defendant's reliance on *Seigel* tenuous. The *Seigel* court's analysis of accrual was in the context of determining when the applicable statute of limitations began to run for a claim which stemmed from a rejection of a termination notice. Because termination notices could be served up to ten years before the effective termination date, the court expressed concern for the limitation period beginning to run and expiring before a claimant's rights vested. *Seigel,* 542 F. Supp. 2d at 1134, n.7. However, the *Seigel* court recognized that it was not resolving the question

4

of when rights arising from a termination notice accrued, thus rendering any statements on the issue *dicta*. *Id.* ("Nonetheless, the Court need not resolve this question . . . .").

Moreover, there is a distinction between suing to determine whether a notice of termination is valid, resulting in the vesting of "[t]he future rights that will revert upon termination of the grant" as provided by the statute, 17 U.S.C. § 203(b)(2), and suing for the proceeds that would result after the termination becomes effective and reverts ownership from the grantee to the statutory heirs. This distinction is highlighted in *Marvel Worldwide, Inc. v. Kirby*, wherein the court allowed statutory heirs to proceed with a claim for declaratory relief to establish the validity of notices of termination,[2] but dismissed as unripe their second claim, which sought to determine the allocation of future profits that would result when the terminations took effect. 756 F. Supp. 2d 461, 468 (S.D.N.Y 2010). In the instant case, Plaintiffs' declaratory judgment action is identical to the claim the *Kirby* court allowed to proceed, and unlike the plaintiffs in *Kirby*, Plaintiffs in the instant case do not bring any claim based on the profits they expect to receive from exploitation of the Work once ownership would revert.

The *Kirby* court's implicit holding that the declaratory judgment claim addressing the validity of the notices of termination was ripe comports with this Court's view. A claim is ripe when the parties have "adverse legal interests . . . [that are] not hypothetical, conjectural, conditional, or based on upon the possibility of a factual situation that may never develop." *Coconut Grove House, Inc.*

---

[2]The court did not explicitly hold that the first declaratory judgment action was ripe. However, because ripeness is a threshold matter, *Palazzolo*, 533 U.S. at 618, by allowing the claim to proceed the court implicitly held that it was constitutionally ripe.

5

*v. U.S. Dept. of Health & Human Servs.*, 805 F. Supp. 39 (S.D. Fla. 1992). Here, no contingency must occur to create adverse legal interests between the parties. By purporting to serve a valid § 203 notice upon Defendant, which notice Defendant has repudiated, Plaintiffs have created a controversy as to whether "[t]he future rights that will revert upon termination of the grant [have] become vested," as provided by the statute. 17 U.S.C. § 203(b)(2). This controversy is therefore ripe and non-speculative, and the Court has jurisdiction to adjudicate it.

### B. *Personal Jurisdiction*

The Court next considers personal jurisdiction. "A federal district court in Florida may exercise personal jurisdiction over a non-resident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). The Court therefore looks first to Florida's long-arm statute, Fla. Stat. § 48.193. Because the Court finds that Defendant does not fall within the ambit of the Florida long-arm statute, the Court does not consider the federal due process prong of the jurisdictional analysis. *Babbitbay*, 598 F.3d at 807 ("[F]ederal courts are duty bound to avoid a constitutional question if answering the question is unnecessary to the adjudication of the claims at hand."). "When the defendant disputes the factual bases for jurisdiction . . . the court may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery' to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). However, "the plaintiff is required to present only a *prima facie* case for personal jurisdiction," and the court "must construe all disputed facts in the plaintiff's favor." *Id.*

The sole statutory basis for personal jurisdiction asserted by Plaintiffs is general jurisdiction under Fla. Stat. § 48.193(2). That statute provides that jurisdiction exists over "[a] defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Because Defendant is a mere holding company with no business activity in Florida, Plaintiffs attempt to establish jurisdiction over it through agency principles. In *Meier v. Sun Int'l Hotels, Ltd.*, the Eleventh Circuit held that "[a] court may extend jurisdiction to any foreign corporation where [an] affiliated domestic corporation[3] 'manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation.'" 288 F.3d 1264, 1272 (11th Cir. 2002) (quoting *State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. 4th DCA 1998)). Plaintiffs suggest that the activities of two entities affiliated with Defendant, namely EMI Blackwood Music, Inc. ("EMI Blackwood") and EMI Entertainment World, Inc. ("EMI Entertainment") (collectively, "the Affiliated Entities"), may be attributed to Defendant so as to subject it to general personal jurisdiction in Florida.

The problem with Plaintiffs' application of the rule in *Meier* is that, although EMI

---

[3]As discussed below, Plaintiffs nominate EMI Blackwood and EMI Entertainment to fill the role of "[a]n affiliated domestic corporation." The Court concludes that *domestic* corporation means an entity incorporated in Florida. Fla. Stat. § 607.01401(5)(domestic corporation means a corporation for profit, which is not a foreign corporation, incorporated under the Florida Business Corporation Act), *cf.* Fla. Stat. § 607.01401(12)(foreign corporation means a corporation for profit incorporated under the laws of a state other than Florida). It should be noted that neither EMI Blackwood nor EMI Entertainment are Florida *domestic* corporations. Thus, assuming that the rule in *Meier* is even applicable to the facts of this case, at the very least, Plaintiffs have to demonstrate (1) that EMI Blackwood and EMI Entertainment conduct sufficient business activity in Florida for the Court to exercise general jurisdiction over them; (2) that these corporate entities manifest no separate corporate interests of their own and (3) they function solely to achieve the purpose of Defendant in Florida.

Blackwood and EMI Entertainment have some activities in Florida, Plaintiff has not shown that any of these activities are designed "to achieve the purpose of the dominant corporation"—i.e., Defendant. Even assuming that the activities of the Affiliated Entities are sufficient to subject them to general personal jurisdiction in Florida, their activities in Florida could only be relevant to Defendant to the extent that they are undertaken on Defendant's behalf. Moreover, although the Affiliated Entities may conduct substantial business for Defendant in other jurisdictions—e.g., New York—"Plaintiff must persuade the court that the [Affiliated Entities] are the entities through which [Defendant] conduct[s] substantial business activity *in Florida*." *Meier*, 228 F.3d at 1272 (emphasis added).

Instead, Plaintiff merely alleges that "Defendant's agents are found in, reside in and/or transact substantial and not isolated business in Florida" and that the Affiliated Entities perform "all of the services offered by [Defendant]." Am. Compl. ¶¶ 13-14 (DE 39). Plaintiff fails to allege either that the substantial activity conducted in Florida by Defendant's Affiliated Entities relates in any way to Defendant or that any of the services performed by the Affiliated Entities on Defendant's behalf occur in Florida. Absent these allegations, Plaintiff has failed as a matter of law to allege a proper basis for personal jurisdiction over Defendant.

Looking beyond the allegations in the Complaint to the undisputed facts uncovered through discovery and raised in Plaintiffs' brief, it is clear that Plaintiffs could not have properly alleged a basis for jurisdiction over Defendant. The activities of the Affiliated Entities that Plaintiffs have uncovered are either unrelated to Defendant, do not take place in Florida, or fall well short of the level of activity required to establish general personal jurisdiction. For example, Plaintiffs point out

8

that EMI Blackwood maintains an office and several employees in Miami, Florida. However, no where does Plaintiff state that any business conducted through the Miami office relates to Defendant, and Defendant points out that the Miami office deals almost exclusively with Latin music that is not a part of Defendant's catalog. Moreover, after conducting jurisdictional discovery, Plaintiffs can only cite one instance of the Miami office licensing a work in Defendant's catalog in what an employee in the Miami office described as an "odd case" undertaken to accommodate an unusual request from a Latin label client. This one instance plainly does not amount to "substantial, not isolated activity," Fla. Stat. § 48.193(2), and Plaintiffs' groundless speculation that "many more licenses or quotes . . . may have been issued by the Miami office" is of no help. Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss Compl. 8 (DE 43).

Plaintiffs also refer to lawsuits Defendant filed in Florida, a passive EMI website, and numerous activities undertaken by the Affiliated Entities in non-Florida jurisdictions. The Court has reviewed these assertions and finds that none of them are sufficient to establish general personal jurisdiction over Defendant. Accordingly, the Court must dismiss the Amended Complaint. Because Plaintiffs have already been afforded an opportunity to amend their complaint after jurisdictional discovery and because further leave to file an amended complaint in this district would be futile, the Court will not grant further leave to amend.

## CONCLUSION

In light of the foregoing, it is hereby **ORDERED** and **ADJUDGED** that:

1. The portion of Defendant's first motion to dismiss (DE 12) addressing personal jurisdiction is **GRANTED**.

2. The portion of Defendant's second motion to dismiss (DE 42) addressing ripeness is **DENIED**. The remainder of the second motion to dismiss is **DENIED WITHOUT PREJUDICE**.

3. This case is **DISMISSED** without prejudice to Plaintiffs seeking a ruling on the merits before a court of proper jurisdiction.

4. All pending motions are **DENIED AS MOOT** and the Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 10th day of December, 2012.

_____
KENNETH A. MARRA
United States District Judge

*Copies to counsel of record*